01
02
03
04
05
06

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

07  JEANETTE LOUISE LANE,                )   CASE NO.   C13-5658-MJP-MAT
                                         )
08          Plaintiff,                   )
                                         )
09      v.                               )   REPORT AND RECOMMENDATION
                                         )   RE: SOCIAL SECURITY DISABILITY
10  CAROLYN W. COLVIN, Acting            )   APPEAL
    Commissioner of Social Security,     )
11                                       )
            Defendant.                   )
12  _____ )

13          Plaintiff Jeanette Louise Lane proceeds through counsel in her appeal of a final decision

14  of the Commissioner of the Social Security Administration (Commissioner).    The

15  Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and

16  Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge

17  (ALJ).   Having considered the ALJ's decision, the administrative record (AR), and all

18  memoranda of record, the Court recommends that this matter be AFFIRMED.

19                      **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1960.[1]   She has a high school degree and studied

21

22          1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
    Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

01 computer science at Evergreen State College. (AR 48.)  She has past relevant work as a

02 general house worker, customer service representative, door-to-door sales representative, office

03 helper, nurse assistant, fast food service manager, residential leasing agent, all-around logger,

04 announcer, and access coordinator for cable television.

05      Plaintiff filed applications for DIB, SSI, and disabled widow's benefits on March 22,

06 2010, alleging disability beginning June 29, 2009.  She is insured for DIB through June 30,

07 2012.  Plaintiff's applications were denied at the initial level and on reconsideration, and she

08 timely requested a hearing.

09      On March 15, 2012, ALJ David Johnson held a hearing, taking testimony from plaintiff

10 and a vocational expert. (AR 42-93.)  On April 20, 2012, the ALJ issued a decision finding

11 plaintiff not disabled from June 29, 2009 through the present. (AR 21-34.)

12      Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review

13 on June 7, 2013 (AR 1-6), making the ALJ's decision the final decision of the Commissioner.

14 Plaintiff appealed this final decision of the Commissioner to this Court.

15                                    **JURISDICTION**

16      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

17                                    **DISCUSSION**

18      The Commissioner follows a five-step sequential evaluation process for determining

19 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

20 must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had

21

22

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

01  not engaged in substantial gainful activity since the alleged onset date of June 29, 2009.[2]   At

02  step two, it must be determined whether a claimant suffers from a severe impairment.   The

03  ALJ found plaintiff's depressive disorder, personality disorder, posttraumatic stress disorder,

04  fibromyalgia, chronic atrophic vaginitis, obesity, and hypertension severe.   Step three asks

05  whether a claimant's impairments meet or equal a listed impairment.   The ALJ found that

06  plaintiff's impairments did not meet or equal the criteria of a listed impairment.

07       If a claimant's impairments do not meet or equal a listing, the Commissioner must

08  assess residual functional capacity (RFC) and determine at step four whether the claimant has

09  demonstrated an inability to perform past relevant work.   The ALJ found plaintiff able to

10  perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with a limitation to

11  occasionally climb, stoop, crouch or crawl.   Plaintiff can perform work that does not require

12  concentrated exposure to extreme cold, vibration or hazards such as open machinery or

13  unprotected heights.   She can perform simple tasks that do not require more than superficial

14  interaction with the public or coworkers.   She can perform work in a structured environment

15  that does not require the exercise of more than rudimentary judgment.   With that assessment,

16  the ALJ found plaintiff unable to perform her past relevant work.

17       If a claimant demonstrates an inability to perform past relevant work, the burden shifts

18  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

19  an adjustment to work that exists in significant levels in the national economy.   With the

20  assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such

21  ───────────────────

22       2 Previously, it was found that the plaintiff was the unmarried widow of deceased insured
worker William Merrill Oleary, had attained the age of fifty, and met the non-disability requirements for
disabled widow's benefits set forth in Section 202(e) of the Social Security Act.   (AR 24.)

REPORT AND RECOMMENDATION
PAGE -3

01  as housekeeping cleaner, garment folder, and parts cleaner, and, therefore, not disabled.

02        This Court's review of the ALJ's decision is limited to whether the decision is in

03  accordance with the law and the findings supported by substantial evidence in the record as a

04  whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means

05  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

06  reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881

07  F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which

08  supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278

09  F.3d 947, 954 (9th Cir. 2002).

10        Plaintiff argues the ALJ erroneously evaluated some of the medical opinion evidence,

11  and gave insufficient reasons to reject her subjective claims. Therefore, plaintiff argues,

12  substantial evidence did not support the ALJ's RFC assessment. She requests remand for an

13  award of benefits or, alternatively, for further administrative proceedings. The Commissioner

14  argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

15  <u>Medical Opinions</u>

16        In general, more weight should be given to the opinion of a treating physician than to a

17  non-treating physician, and more weight to the opinion of an examining physician than to a

18  non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not

19  contradicted by another physician, a treating or examining physician's opinion may be rejected

20  only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

21  1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may

22  not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

REPORT AND RECOMMENDATION
PAGE -4

01  the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

02  1983)).   The ALJ may reject physicians' opinions "by setting out a detailed and thorough

03  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

04  making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

05  881 F.2d at 751).   Rather than merely stating her conclusions, the ALJ "must set forth [her]

06  own interpretations and explain why they, rather than the doctors', are correct."  *Id.*  (citing

07  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

08  A.   Kristine Harrison, Psy.D.

09         Dr. Harrison conducted a psychological evaluation on January 18, 2010.   (AR 300-09.)

10  The ALJ gave "significant weight" to Dr. Harrison's opinion that plaintiff "should look for a

11  position in which she can work alone as opposed to working with a team [and] may do best with

12  clear and consistent supervision as well as clear expectations."  (AR 32, 309.)   The ALJ found

13  Dr. Harrison's opinions to be "provided after a thorough evaluation of the claimant's abilities

14  [and] consistent with the plaintiff's performance during the evaluation as well as the

15  evaluations with Dr. Wingate and Dr. Neims."  (*Id.*)

16         Plaintiff argues the ALJ erred in the consideration of Dr. Harrison's opinions.   Plaintiff

17  references another comment by Dr. Harrison that plaintiff "may do best with clear and

18  consistent supervision that could assist her in limiting or preventing unusual interpretations of

19  material and by identifying rewards and consequences for specific behaviors."  (AR 309.)

20  She argues the ALJ rejected this opinion *sub silentio* by neither adopting it, nor specifically

21  rejecting it.

22         However, the Court finds no error in the ALJ's consideration of Dr. Harrison's

REPORT AND RECOMMENDATION
PAGE -5

01 opinions.   While plaintiff paraphrases Dr. Harrison's opinion as requiring "interventionist

02 supervision to limit and prevent Plaintiff's observed tendency to overlay disruptive

03 interpretations on reality" (Dkt. 17 at 6), in fact, Dr. Harrison's opinions, stated in the

04 "Recommendations" section of the report, were less emphatic:

05      Ms. Lane might want to consider work in which she can work alone as opposed
     to being part of a close knit team.   She may do best with clear and consistent

06      supervision that could assist her in limiting or preventing unusual interpretations
     of material and by identifying rewards and consequences for specific behaviors.

07      Clear expectations may also be helpful to Ms. Lane.

08 (AR 309.)

09      Considering Dr. Harrison's opinions, the ALJ noted the psychologist's observation that

10 plaintiff was cooperative and persistent with all the assessment tasks, was able to compose

11 herself when she became tearful, was alert and oriented, and had adequate immediate memory,

12 attention, and concentration.   (AR 28.)   Plaintiff possessed an adequate fund of knowledge,

13 was able to perform abstract reasoning and adequately interpret proverbs, and had average

14 cognitive capacity.   (*Id*.)   Her judgment and reasoning varied and, while she held

15 non-mainstream, unusual beliefs, her reality testing appeared good and her thought process was

16 coherent.   (*Id*.)   Citing, *inter alia,* Dr. Harrison's opinion that plaintiff should look for a

17 position in which she could work alone as opposed to working with a team and have clear and

18 consistent supervision as well as clear expectations (AR 32), the ALJ restricted plaintiff to

19 "simple tasks that do not require more than superficial interaction with the public or coworkers

20 … in a structured environment that does not require the exercise of more than rudimentary

21 judgment."   (AR 26.)

22      There is no requirement that an ALJ's RFC directly correspond with a specific medical

01  opinion on the functional capacity in question.  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th

02  Cir. 2012).   Indeed, the "final responsibility" for deciding issues such as an individual's RFC

03  "is reserved to the Commissioner."   Social Security Ruling (SSR) 96-5p.   Furthermore, Dr.

04  Harrison specifically provided her opinion in the form of a "Recommendation" (*see* AR 308),

05  rather than "an imperative."   *See Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155, 1165 (9th

06  Cir. 2008) (finding reasonable the ALJ's reliance on opinions provided as specific statements

07  about functional abilities rather than an opinion provided in the form of a recommendation). *See*

08  *also Valentine v. Comm'r Soc. Sec.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (finding the ALJ did

09  not err by omitting from the RFC finding the opinion of a doctor set forth in the

10  "Recommendations" section of his report).   The Court finds legally sufficient the ALJ's

11  consideration of Dr. Harrison's opinions.

12  B.   <u>Jack T. Norris, Ph.D.</u>

13       Dr. Norris conducted a psychological evaluation on January 25, 2011.   (AR 1199-

14  1210.)   Plaintiff argues the ALJ erred in evaluating Dr. Norris' opinions.   Specifically,

15  plaintiff points to the lack of discussion of the Global Assessment of Functioning (GAF) score

16  of 45 assigned by Dr. Norris.   Somewhat obliquely, plaintiff also seems to argue the ALJ erred

17  by failing to adopt all of the functional limitations opined by Dr. Norris.

18       The GAF score is a "rough estimate" of an individual's psychological, social and

19  occupational functioning, and is used to assess the need for treatment.   *Vargas v. Lambert*, 159

20  F.3d 1161, 1164 n.2 (9th Cir. 1998).   It is not an appropriate methodology, and was not

21  designed to be so, for assessing the severity of a mental impairment or assessing RFC in the

22  context of adjudicating disability.   The previous version of the Diagnostic and Statistical

01  Manual of Mental Disorders (DSM) designated a GAF score between 41 to 50 as describing

02  "serious symptoms" or "any serious impairment in social, occupational, or school functioning."

03  DSM-IV 34 (4th ed. 2000).    The current version of the DSM does not include a GAF rating

04  for assessment of mental disorders.   DSM-V 16-17 (5th ed. 2013).

05         The Administrative Message pointed to by plaintiff indicates the SSA will continue to

06  receive and consider GAF scores, and will consider a score as opinion evidence "when it comes

07  from an acceptable medical source[.]"   AM-13066.   It also clarifies:

08         However, as with other opinion evidence, a GAF needs supporting evidence to
           be given much weight. By itself, the GAF cannot be used to "raise" or "lower"
09         someone's level of function. The GAF is only a snapshot opinion about the level
           of functioning. It is one opinion that we consider with all the evidence about a
10         person's functioning. Unless the clinician clearly explains the reasons behind
           his or her GAF rating, and the period to which the rating applies, it does not
11         provide a reliable longitudinal picture of the claimant's mental functioning for a
           disability analysis.

12  *Id*.

13         Indeed, the previous version of the DSM specifically provided that the GAF assessment

14  is made based on either the individual's symptoms or her functional impairments, <u>whichever is</u>

15  <u>lower</u>.   DSM-IV-TR at 32-33 (emphasis added).   The Commissioner has determined the GAF

16  scale "does not have a direct correlation to the severity requirements in [the Social Security

17  Administration's] mental disorders listings."   65 Fed. Reg. 50,746, 50,765-766 (Aug. 21,

18  2000).   The Court, for all of these reasons, finds no error in relation to the ALJ's failure to

19  mention the GAF score assessed by Dr. Norris.

20         As to the functional limitations set forth in Dr. Norris' report, plaintiff's argument

21  overemphasizes the checkmark designations of the degree of severity of the functional

22

01  limitations outside of the context of the doctor's narrative comments and observations.[3]  So,

02  for example, while Dr. Norris checked the box for "marked" limitations on plaintiff's "ability to

03  be aware of normal hazards and take appropriate precautions," the comments which follow

04  explain the basis of that assessment—the doctor's opinion that multiple sources of internal and

05  external distractions were likely to cause plaintiff "to have suboptimal awareness of some types

06  of environmental hazards." (AR 1202.)  Commensurately, the ALJ adopted a limitation on

07  plaintiff's ability to perform work requiring concentrated exposure to cold, vibration, or

08  hazards such as open machinery or unprotected heights.   (AR 26.)

09      Similarly, while Dr. Norris checked the box for "marked" and "moderate" limitations

10  on plaintiff's "ability to communicate and perform effectively in a work setting with public

11  contact" and in a work setting with limited public contact, respectively, his narrative

12  observations identified low self-confidence and easy distractibility as the source of the

13  problem.   The ALJ limited plaintiff to the performance of simple tasks "that do not require

14  more than superficial interaction with the public or coworkers."   (*Id.*)   Rather than rejecting

15  Dr. Norris' opinion "*sub silentio,*" as plaintiff argues, the ALJ reasonably accommodated the

16  difficulties identified by Dr. Norris.

17  C.     Brett Trowbridge, Ph.D.

18      Plaintiff's assignment of error regarding the ALJ's consideration of the opinions of Dr.

19  Trowbridge rests on similar grounds.   Plaintiff argues the ALJ erred by rejecting the GAF

20

21      3 *See* Program Operations Manual System (POMS) DI 25020.010 at B.1 (ALJ should use
    narrative portion of Mental RFC Assessment form, not checkbox portion of form, in assessing RFC).
22  *See also Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized
    medical opinions over check-off reports).

REPORT AND RECOMMENDATION
PAGE -9

01  score of 50 assigned by Dr. Trowbridge.   She also argues the ALJ failed to include a limitation

02  in maintaining appropriate behavior in a work setting.   As with her arguments regarding Dr.

03  Norris, plaintiff contends Dr. Trowbridge's limitation would require an "intervening

04  supervisor" to "limit and prevent her from 'unusual interpretations of material.'" (Dkt. 17 at 9.)

05        As with the assignment of error regarding Dr. Norris, plaintiff fails to show the GAF

06  score of 50 constituted significant probative evidence.   *See Vincent v. Heckler*, 739 F.2d 1393,

07  1394-95 (9th Cir. 1984) (the ALJ need not discuss each piece of evidence in the record, but

08  must explain why 'significant probative evidence has been rejected.'") (quoting *Cotter v.*

09  *Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).   The ALJ reasonably declined to give the score any

10  weight, finding it to be not evident what specifically was being rated, overly reliant on

11  plaintiff's less than credible subjective complaints, and not conveying information that furthers

12  the work-related functional analysis.   (AR 30.)

13        Plaintiff also argues the ALJ erred by failing to adopt a "limitation to maintaining

14  appropriate behavior in a work setting" (Dkt. 17 at 8), referring to Dr. Trowbridge's

15  check-mark indication of a "marked" limitation on plaintiff's ability to "maintain appropriate

16  behavior in a work setting."   (AR 1282.)   Dr. Trowbridge's comments link that factor to his

17  observation of plaintiff as "anxious and depressed". (*Id.*)   The ALJ acknowledged Dr.

18  Trowbridge's opinion in this regard, limiting plaintiff to the performance of simple tasks

19  performed without more than superficial contact with the public or coworkers, and working in a

20  structured environment not requiring the exercise of more than rudimentary judgment.   (AR

21  29, 32).

22        In sum, the Court finds no error in the ALJ's consideration of the opinions of Dr.

01  Harrison, Dr. Norris, or Dr. Trowbridge.

02  <u>Credibility</u>

03        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

04  reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

05  (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

06  260 F.3d 1044, 1049 (9th Cir. 2001).   "General findings are insufficient; rather, the ALJ must

07  identify  what  testimony  is  not  credible  and  what  evidence  undermines  the  claimant's

08  complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).   "In weighing a claimant's

09  credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

10  testimony or between his testimony and his conduct, his daily activities, his work record, and

11  testimony from physicians and third parties concerning the nature, severity, and effect of the

12  symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

13  1997).

14        Here,  the  ALJ  found  plaintiff's  subjective  complaints  regarding  the  intensity,

15  persistence, and limiting effects of her physical and mental impairments not entirely credible.

16  Plaintiff does not challenge the ALJ's assessment of her physical complaints, but argues the

17  ALJ  gave  insufficient  reasons  to  reject  her  reported  mental  problems  and  limitations.

18  However, plaintiff's contention is entirely derivative of her arguments regarding the ALJ's

19  failure to adopt limitations opined by Drs. Harrison, Norris, and Trowbridge.   Finding no error

20  in the ALJ's evaluation of those opinions, the Court finds further consideration of the ALJ's

21  credibility assessment unnecessary.

22  */ / /*

REPORT AND RECOMMENDATION
PAGE -11

01
**<u>CONCLUSION</u>**

02
For the reasons set forth above, this matter should be AFFIRMED.

03
DATED this <u>5th</u> day of March, 2014.

04

05
_____
Mary Alice Theiler
06
Chief United States Magistrate Judge

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22