1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   JEANETTE LANE,                                CASE NO. C13-5658 MJP

11                          Plaintiff,             ORDER ON REPORT AND
                                                   RECOMMENDATION
12          v.

13   CAROLYN COLVIN,

14                          Defendant.

15

16          The Court, having received and reviewed:

17          1.  Report and Recommendation (Dkt. No. 20)

18          2.  Plaintiff's Objections (Dkt. No. 21)

19          3.  Defendant's Response to Plaintiff's Objections (Dkt. No. 23)

20          4.  Plaintiff's Reply to Defendant's Response to Plaintiff's Objections

21   and all attached declarations and exhibits, makes the following ruling:

22          IT IS ORDERED that the Report and Recommendation is ADOPTED, and the findings

23   below are AFFIRMED.

24

ORDER ON REPORT AND
RECOMMENDATION- 1

**Background[1]**

Plaintiff is a 54 year-old woman with a high school degree and some college credits in computer science.  She has worked as a general house worker, customer service representative, door-to-door salesperson, office helper, nurse assistant, fast food service manager, residential leasing agent, all-around logger, announcer, and access coordinator for cable television.

Plaintiff filed applications for Disability Insurance Benefits, SSI and disabled widow's benefits on March 22, 2010, with an alleged disability onset of June 29, 2009.  Her applications were denied both initially and upon reconsideration and she exercised her rights to timely request a hearing.

The hearing was held on March 15, 2012, and the Administrative Law Judge ("ALJ") took testimony from Plaintiff and a vocational expert.  (AR 42-93.)  On April 20, 2012, the ALJ issued a finding that Plaintiff was not disabled.  (AR 21-34.).  His findings are summarized as follows:

**Step 1**      Plaintiff not gainfully employed since June 29, 2009.

**Step 2**      Plaintiff suffered from depressive disorder, personality disorder, post-traumatic stress disorder ("PTSD"), fibromyalgia, chronic atrophic vaginitis, obesity and hypertension; all of which warranted a finding of "severe impairment."

**Step 3**      Plaintiff's impairments did not meet or equal criteria of listed impairments.

**Step 4**      Plaintiff was unable to perform her past relevant work, but was able to perform light work.[2]

---

[1] From the "Facts" and "Discussion" sections of the Report and Recommendation. (Dkt. No. 20, pp. 1-4.)
[2] Limitations: occasionally climb, stoop, crouch or crawl; no concentrated exposure to extreme cold, vibration or hazards (e.g., open machinery or unprotected heights); simple tasks with no more than superficial interaction with public or co-workers; "in a structured environment that does not require the exercise of more than rudimentary judgment." [AR 26.]

| | |
|---|---|
| 1 | **Step 5**        Plaintiff is capable of performing other jobs that exist in significant levels in the |
| 2 | national economy (housekeeping cleaner, garment folder, parts cleaner); i.e., |
| 3 | Plaintiff was not disabled. |

4    The Appeals Council denied Plaintiff's request for review on June 7, 2013 (AR 1-6) and

5 Plaintiff thereafter appealed the Commissioner's final decision to this Court.  Upon review, the

6 Magistrate Judge recommends affirming the Commissioner's decision.

7                                                 **Discussion/Analysis**

8        The Court will address the arguments made by Plaintiff for rejecting the ALJ's findings,

9 including her objections to the Magistrate Judge's recommendations that those findings be

10 affirmed.

11 _Dr. Harrison's opinion_

12        Dr. Harrison conducted a psychological evaluation of Plaintiff on January 18, 2010.  (AR

13 300-309.)  Plaintiff cites to Dr. Harrison's report:

> 14        Ms. Lane might want to consider work in which she can work alone as opposed to
> being part of a close knit team. *She may do best with clear and consistent*
> 15 *supervision that could assist her in limiting or preventing unusual interpretations*
> *of material and by identifying rewards and consequences for specific behaviors.*
> 16 Clear expectation may also be helpful to Ms. Lane.

17 AR 309 (emphasis supplied).  Plaintiff argues that this language articulates a <u>requirement</u> that

18 Plaintiff's work environment include "assistive supervision" and further argues that the ALJ's

19 failure to include such a requirement amounted to a rejection of Dr Harrison's opinion without

20 the requisite "specific and legitimate reasons."  *See* <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir.

21 1996).

22        This is not a well-taken position for a number of reasons.  In the first place, the ALJ

23 accorded "significant weight" to Dr Harrison's opinion (AR 32, 309) and as a result, restricted

24 Plaintiff to "simple tasks that do not require more than superficial interaction with the public or

1  coworkers… in a structured environment that does not require the exercise of more than

2  rudimentary judgment."  (AR 26.)

3        Secondly, the observation in Dr Harrison's report concerning "clear and consistent

4  supervision" is couched entirely in terms of a recommendation ("she <u>may do best</u>…"), not a

5  requirement.  Thirdly, the ALJ's restriction that Plaintiff work "in a structured environment" is

6  completely consistent that recommendation and (as the R&R points out) the RFC's are not

7  required to have a one-on-one correspondence with the medical opinions of the functional

8  capacity at issue.  <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012).

9  *Dr. Norris's and Dr. Trowbridge's opinions*

10       Dr. Norris examined Plaintiff on January 25, 2010.  He diagnosed Plaintiff with PTSD,

11  chronic, Major Depressive Disorder, recurrent, severe vs. Schizoaffective Disorder, and

12  Personality Disorder.  (AR 1201.)  He found Plaintiff to have "marked" limitations in her ability

13  to be aware of hazards and take appropriate precautions due to multiple sources of internal

14  distraction and external sources of distraction; and to have "marked" limitations in her ability to

15  communicate and perform effectively in a work setting with public contact.  He further found her

16  to have "moderate" impairment in her ability to perform effectively in a work setting without

17  public contact and in her ability to maintain appropriate behavior in a work setting.  (TR 1202.)

18  He rated her Global Assessment of Function ("GAF") score at 45.   A GAF score of 41-50

19  indicates "serious symptoms… OR any serious impairment in social, occupational, or school

20  functioning."  <u>Pisciotta v. Astrue</u>, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).

21       In making his findings, the ALJ gave Dr. Norris's opinion "significant weight."  (AR 32.)

22  The Plaintiff attacks the ALJ's findings on the grounds that, in failing to specifically mention the

23  GAF score, the ALJ "rejected" that assessment and "did not give sufficient reasons to *sub*

24

ORDER ON REPORT AND
RECOMMENDATION- 4

*silentio* reject a portion of Dr. Norris's opinion…" Pltf Opening Brief, p. 11.  The R&R goes to

great lengths to justify the ALJ's refusal to assign the GAF score any weight, and Plaintiff in turn

attacks that analysis as an inappropriate exercise of "executive power."  In her reply brief,

Plaintiff expands on this argument by citing to case law which prohibits a magistrate judge from

enunciating a rationale which the ALJ did not articulate in the original findings.  SEC v.

Chenery, 32 U.S. 194, 106 (1947).

Plaintiff's substantive argument (that the ALJ "rejected" Dr. Norris's opinion without

sufficiently articulated reasons) is without merit.  The ALJ spends a lengthy paragraph in his

Findings of Fact and Conclusions of Law discussing his reasons for not according much weight

to the GAF scores:

> The undersigned notes that Dr. Trowbridge assigned the claimant a Global Assessment of
> Functioning (GAF) of 50 (18F/3).  However the undersigned declines to give this score
> any significant weight… the undersigned gives these scores very little weight because
> they lack probative value.  The regulations direct a function-by-function assessment of
> the claimant's maximum residual functional capacity (*See* S.S.R. 96-9p).  But as shown
> in the explanation accompanying the scores on the GAF scale, the scores are an attempt
> to rate symptoms *or* functioning in areas beyond simply work-related functioning
> (*citation omitted*).  In this case, it is not evident after reviewing the GAF scores in the
> record what the clinicians were rating.  This is particularly relevant to the undersigned's
> analysis of the claimant's ability to perform basic work activities, as symptoms are an
> individual's "own description" of his or her impairments.  (*See* SSR 96-7p).  As the
> undersigned finds that the claimant's statements regarding functioning are less than fully
> credible, a score based on statements from the same source is of little value in the
> analysis.  Furthermore as made clear in the August 2000 comments in the Federal
> Register about regulations that address the mental disorder evaluation under the Social
> Security Act, the GAF scale "does not have a direct correlation to the severity
> requirements in our mental disorder listings" (*citation omitted*).  For these reasons, the
> undersigned finds the GAF scores in this case do not convey information that furthers the
> work-related function analysis and therefore gives the scores very little weight.

(TR 30; emphasis in original.)

Plaintiff treats this analysis as though it applies only to Dr. Trowbridge, but that

completely misreads the above section.  While it is true that the ALJ starts out referring only to

1    Dr. Trowbridge, the analysis quickly expands to cover <u>both</u> references to the GAF scores.  There

2    is no reason not to apply the ALJ's critique to both the GAF score of Dr. Trowbridge and Dr.

3    Norris, and that critique is a more than sufficient articulation of valid reasons for discounting this

4    measurement tool.  By the end of the paragraph, the ALJ concludes that he "finds the GAF

5    <u>scores</u> in this case do not convey information that furthers the work-related function analysis and

6    therefore gives the scores very little weight."  (<u>Id.</u>; emphasis supplied.).  The ALJ has

7    unquestionably articulated valid grounds for rejecting both doctors' use of the GAF scores.

8         Given this, the Court declines to reach Plaintiff's argument that the Magistrate Judge's

9    R&R goes too far in articulating reasons not advanced by the ALJ for discounting the

10   significance of the GAF test results.  The ALJ does provide specific and legitimate reasons for

11   not giving weight to this portion of Dr. Norris's or Dr. Trowbridge's findings, and the Court

12   need inquire no further.

13        Dr. Trowbridge examined Plaintiff on January 5, 2012.  He concluded that she had PTSD

14   and a Major Depressive Disorder, recurrent and severe; he rated her GAF score at 50.  (AR

15   1281.)  Like Dr. Norris, Dr. Trowbridge found Plaintiff to have "marked" limitations in her

16   ability to be aware of hazards and take appropriate precautions due to "poor judgment;" and to

17   have "marked" limitations in her ability to communicate and perform effectively in a work

18   setting with public contact because Plaintiff was "anxious and depressed."  (AR 1282.)

19   Plaintiff argues (more in her Opening Brief – *see* Dkt. No. 17 – than in her Objections) that the

20   ALJ improperly rejected Dr. Trowbridge's GAF results.  But the Court concurs with the

21   Magistrate Judge: (1) the ALJ gives specific and legitimate reasons for not considering these

22   GAF scores to have probative value and (2) the ALJ is not required to discuss every piece of

23

24

ORDER ON REPORT AND
RECOMMENDATION- 6

1  evidence in the record, but only to explain why "significant probative evidence has been

2  rejected."   Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

3         Regarding the recommendations of both Dr. Norris and Dr. Trowbridge, Plaintiff argues

4  that the ALJ's findings are faulty because (despite giving those doctors' opinions "significant

5  weight") the RFCs he articulated did not adopt those recommendations.  She argues again that, in

6  rejecting the recommendations "*sub silentio*," the ALJ failed to articulate the reason for rejecting

7  opinions he deemed "significant" elsewhere.

8         In reality, the ALJ did not reject the findings of these doctors; it appears more likely that

9  Plaintiff simply disagrees with manner in which he adopted them.  Plaintiff places undue

10 emphasis on the "check box" findings of the doctors – "marked" limitations in her ability to be

11 aware of hazards and take appropriate precautions, and "marked" limitations in the ability to

12 communicate and perform effectively in a work setting with public contact.  As the Magistrate

13 Judge points out in the R&R, the Program Operations Manual System (DI 25020.010 at B.1)

14 directs the ALJ to give preference to the narrative portion of the Mental RFC Assessment Form,

15 not the checkbox portion.  (R&R, p. 9 n.3.).

16        The narrative observations of the doctors, which identified such conditions as suboptimal

17 awareness of environmental hazards and low self-confidence and easy distractibility, plus limited

18 judgment, anxiety and depression (Dr. Norris, AR 1201; Dr. Trowbridge, AR 1282), were

19 incorporated into the limitations directed by the ALJ -- no concentrated exposure to extreme

20 cold, vibration or hazards (e.g., open machinery or unprotected heights); simple tasks with no

21 more than superficial interaction with public or co-workers; all work to take place "in a

22 structured environment that does not require the exercise of more than rudimentary judgment"

23 [AR 26.]).  The Court understands that Plaintiff does not believe that the ALJ went far enough,

24

1  but there is a rational connection between the doctors' opinions and the ALJ's limitations and the

2  Court finds that sufficient to uphold the ALJ's decision.

3  *Plaintiff's credibility*

4        The ALJ did not find Plaintiff to be credible.  Plaintiff does not challenge the ALJ's

5  assessment of her physical complaints, but characterizes her subjective statements about her

6  mental condition as a "plea for assistive supervision" which was corroborated by the opinions of

7  Dr. Harrison and Dr. Norris.  This really is just a re-framing of Plaintiff's argument that the ALJ

8  did not go far enough in incorporating this information into his findings regarding her

9  limitations.  The Magistrate Judge is correct that, in finding no error in the ALJ's evaluation of

10  the medical opinions, we should likewise find no error in the ALJ's failure to incorporate

11  Plaintiff's assessment of her own mental condition into his findings.

12  **Conclusion**

13        The Court concurs with the findings of the Report and Recommendation and ADOPTS

14  them insofar as they are consistent with the findings contained in this order.  Accordingly, the

15  decision of the ALJ in finding Plaintiff to not be disabled as that term is defined in the Social

16  Security regulations is AFFIRMED.

17

18        The clerk is ordered to provide copies of this order to all counsel.

19        Dated May 12, 2014.

20

21

22                             Marsha J. Pechman

23                             United States District Judge

24

ORDER ON REPORT AND
RECOMMENDATION- 8